## Case No. 16,263.

### UNITED STATES v. SHACKFORD.

[1 Ware (171), 169.] [1]

District Court, D. Maine. Feb. Term, 1830.[2]

SHIPPING—NON-DELIVERY OF REGISTER—LIABILITY OF MASTER.

By the arrival of a vessel, sailing under a temporary register, at her home port within the meaning of the third section of the coasting act (Acts 1793, c. 52, § 3 [1 Story's Laws, 286; 1 Stat. 306, c. 8]), is meant an arrival in the regular course of her employment as to one of the termini of her voyage, or for an object connected with and making part of the business in which she was engaged. The master is not rendered liable for the penalty for the non-delivery of his register, by merely touching at the port to land passengers, when on his way to another port.

[Cited in The Javirena, 14 C. C. A. 350, 67 Fed. 155.]

This was an action of debt, brought to recover a penalty of one hundred dollars, against the master of the schooner Sarah, of Eastport, under the act of congress of 1793, c. 52, § 3 [1 Story's Laws, 286; 1 Stat. 306, c. 8]. This section provides that any enrolled and licensed vessel, being in any district other than that to which she belongs, may surrender her enrolment and license, and take out a register, which register, "within ten days after the arrival of such vessel within the district to which she belongs, shall be delivered to the collector of said district, to be by him cancelled;" and if the master neglects to deliver the register he is liable to a penalty of one hundred dollars.

The case was submitted on the following agreed statement of facts: "In this case it was agreed that the schooner Sarah, of which the defendant [Jacob Shackford] was master, belonged to Eastport, and was there duly en-

rolled and licensed; and thence she proceeded to New York, where she took a temporary register, and sailed on a voyage to St. John, New Brunswick, landed her cargo there, and took in a return cargo and passengers for New York. On her way to the latter place she stopped at Eastport, in American waters, and within the district of Passamaquoddy, and anchored off the town, and waited about two hours for the tide, during which period she landed some passengers and their baggage, having a permit from the custom-house for that purpose, took on board some other passengers and small stores, and sailed, under the same temporary register, to New York, and did not deliver up her temporary register to the collector of Passamaquoddy within ten days. On this evidence the cause is submitted to the decision of the judge, reserving the right of appeal as on a judgment rendered on a verdict."

Mr. Shepley, U. S. Dist. Atty.
Mr. Greenleaf, for defendant.

WARE, District Judge. The decision of this case, which is submitted to the court on an agreed statement of facts, turns wholly on the construction of the third section of the act of February 18, 1793, for enrolling and licensing vessels for the coasting trade and fisheries, commonly called the coasting act. Acts 1793, c. 52, § 3 [1 Story's Laws, 286; 1 Stat. 306, c. 8]. This section authorizes the collectors of the customs to give to any enrolled and licensed vessel a register, or to any registered vessel, an enrolment and license, on the surrender of the old enrolment and license or register. But when this change of papers is made in any other district than that to which the vessel belongs, the collector who gives the new papers is directed to transmit those which are surrendered to the register of the treasury, and the master is required, within ten days after the vessel's arrival within the district to which she belongs, to deliver to the collector the new temporary papers, to be by him cancelled; and in case of neglect to comply with this requirement, the master incurs the penalty of one hundred dollars. It is this provision of the law which is alleged to be violated, and the present suit is brought to recover the penalty. The only question which the case presents, is, whether, in the present instance, there was such an arrival as is contemplated by the law. The strict and etymological meaning of the word arrival is to come to the shore, ad ripam; and in the French language, through which the word comes to us from the Latin, this meaning is preserved. In our language, the etymological meaning has not been so closely adhered to; but the radical signification of the word is to come to some place by water. The word implies a transitus and a terminus, a voyage made and a point at which it terminates. In the revenue laws of the United States the word is sometimes used in a sense somewhat loose and indeterminate, as

---

[1] [Reported by Hon. Ashur Ware, District Judge.]

[2] [Affirmed in Case No. 16,262.]

to the term or end of the voyage, and a vessel is said to arrive within a collection district, and to arrive within four leagues of the coast. Laws U. S. 1799, c. 128, §§ 25, 26 [1 Story's Laws, 595; 1 Stat. 646, c. 22].

But the ordinary meaning of the word in the revenue laws is the coming of a vessel to some place of her destination in the course of a voyage—some terminus embraced within the range of her employment, or of the expedition or enterprise in which she is engaged. In this way it is used as contradistinguished from the phrase touching at a port, though in a more loose sense a vessel is said to arrive at a port at which she touches. And this is a distinction which is made in other parts of the statute on which this action is founded. By the 21st section of this act, a vessel licensed for carrying on the fisheries, on obtaining a permission from the collector, is allowed to touch and trade at a foreign port. The touching and trading here is not supposed to be a primary object of her destination; not a terminus coming necessarily within the range of her employment. In the 22d section, the distinction is more clearly marked. It provides that if a vessel employed in the transportation of merchandise from district to district, shall put into a port, other than that for which she is destined, the master shall, within twenty-four hours after his arrival, if there be an officer residing at such port, and she continues there so long, make report, &c. Here the going into a port for which she was not destined, is described by the words "put into," and in the language of the law it only becomes an arrival when she has remained there long enough for the fiscal laws of the country to operate upon her. Before the twenty-four hours have expired, she is, within the words of the act, permitted to depart without making a report.

It appears to me that the spirit and intention of the third section of the act, are answered by giving to the word its most usual signification, that of coming to her home port in the regular course of her employment, as one of the termini of a voyage, or for an object connected with and making a part of the trade or business in which she is engaged. In the present case, the vessel was bound to New York, where she had taken out her temporary papers, with a return cargo, and she touched or put into Eastport merely to land some passengers. This was not part of her principal employment, nor incidental to the primary object of her voyage, but merely casual, and, so to say, fortuitous. It was an act which, in the ordinary use of language, would be described by the expression, to touch, or to put into the port.

That this touching at her home port is not such an arrival as is contemplated by this section, may be argued from the terms of the whole section. The master is allowed ten days after his arrival to make the change of papers which is required. The natural inference is, that the law was not intended to op-

erate, unless she makes a stay of some time at the place; that it was not designed to attach to the case of a mere casual or fortuitous touching. I do not mean to be understood that if a vessel come to her home port in the ordinary course of her employment, and engage there in business, as in the delivery or taking in of a cargo, that she would be authorized to depart at any time within ten days without delivering up her temporary papers. In such a case, it would seem that her papers ought to be surrendered, although her stay at the port is less than ten days. This construction seems to me to satisfy the policy of the law, which requires all vessels to be enrolled or registered in the port to which they belong, and it is not inconsistent with its words. Judgment must therefore be rendered for the defendant. But as the true construction of the statute certainly admits of considerable doubt, a certificate of reasonable cause of prosecution will be given to the collector.

[Subsequently a writ of error was sued out from the circuit court, where the judgment of this court was affirmed. Case No. 16,262.]